UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

COREY LAMONT DAVIS,

Plaintiff,

v.

MULTNOMAH COUNTY; NICOLE MORRISEY, *Sheriff*; *Multnomah County Sheriff*; JOHN DOE 1, *Aramark Food Service;* JANE DOE 2*, Food Service Manager, Inverness Detention Center, Multnomah County*; JANE DOE 3, *Supervisor Food Service Supervisor; Inverness Detention Center, Multnomah County*,

Defendants.

Case No. 3:24-cv-01496-MTK

**OPINION AND ORDER**

**KASUBHAI,** United States District Judge:

Self-represented Plaintiff Corey Lamont Davis, an adult in custody ("AIC"), brings this action under 42 U.S.C. § 1983 and state law, alleging that Defendants violated his federal and state constitutional rights and were negligent in serving Plaintiff contaminated food while he was a pretrial detainee at Inverness Jail. Before the Court is Defendants' Motion for Summary Judgment. ECF No. 22. For the following reasons, Defendants' motion is granted as to Plaintiff's federal claim, and Plaintiff's state law claims are dismissed without prejudice.

## BACKGROUND

Plaintiff is an adult in custody ("AIC") bringing claims related to occurrences while Plaintiff was a pretrial detainee at Multnomah County's Inverness Jail ("Inverness"). First Am. Compl. 1, ECF No. 12.

On August 23, 2024, while housed at Inverness, Plaintiff noted that he bit into "metal" in his food that morning, which had scratched his gums and caused them to bleed. ECF No. 22-8. Plaintiff filed a grievance the same day, complaining that it was the second time he had discovered metal in his food. *Id.* The response to the grievance noted that a small shaving had been confirmed by a deputy and the kitchen was contacted for corrective action. *Id.* Several days later, on August 29, 2024, Plaintiff again discovered metal in his food at dinner and filed a second grievance. ECF No. 22-9 at 1. After Plaintiff showed a deputy the metal, the deputy took his tray and did not order Plaintiff a new one. *Id.* Plaintiff reported that he did not eat dinner. *Id.* Staff responded that "[t]he main part of the proteins were missing, and [Plaintiff] also requested to remove more food off the tray once the object was removed. Because of this, no new tray was requested." *Id.* Plaintiff filed a third grievance on the same day as his second grievance, stating that "[a]t dinner time when I was eating I bit on a screw and it chipped my tooth." *Id.* at 2. Plaintiff filed a final grievance on October 8, 2024, complaining that "[m]etal continues to be in my food." ECF No. 22-10.

Defendant Aramark Food Service is the vendor responsible for food service at Inverness. McAleer Decl. ¶ 2, ECF No. 22-3. Aramark staff became aware of complaints of metal shavings on baked goods in "mid-2024, and no later than the end of July 2024." McAleer Decl. ¶ 3. Defendant investigated the complaint and kitchen staff determined that the shavings were caused by the use of certain cutting utensils on aluminum sheet pans. McAleer Decl. ¶ 4. Defendant

Aramark "immediately replaced" both the utensils and the aluminum sheet pans and was unaware of any subsequent issues after the replacement. McAleer Decl. ¶ 5.

Inverness medical records do not indicate that Plaintiff sought any medical treatment related to contaminated food. Marsala Decl. ¶¶ 3-4, Ex. A, ECF Nos. 22-4, 22-5. Contemporaneous documentation from prison staff at the time Plaintiff alleged he bit into a metal screw note that Plaintiff claimed to have chipped his tooth but stated he was not in any pain, and declined a staff offer to contact medical services. Pedro Decl. Ex. F at 1, ECF No. 22-12. The note further states that staff matched the screw to another identical screw originating from a wood table in the dorm. *Id.* at 2.

**STANDARD**

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, affidavits, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of the dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. *Id.* at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved

against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *T.W. Elec.*, 809 F.2d at 630-31.

## DISCUSSION

### I. Exhaustion

Defendants first move for summary judgment against Plaintiff's federal claim on the basis that Plaintiff failed to exhaust administrative remedies. Under the Prison Litigation Reform Act (PLRA), AICs must exhaust all available administrative remedies before filing a federal action to redress prison conditions or incidents. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."); *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (holding that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong"). The exhaustion requirement is mandatory and requires compliance with both procedural and substantive elements of the facility's administrative process. *Woodford v. Ngo*, 548 U.S. 81, 85, 90 (2006). Further, an AIC must exhaust all available grievance remedies before filing a Section 1983 complaint, including appealing grievance decisions to the highest level. *Jackson v. Fong*, 870 F.3d 928, 933 (9th Cir. 2017).

If the defendant shows that the plaintiff did not exhaust an available administrative remedy, "the burden shifts to the prisoner to come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino v. Baca*, 747 F.3d 1162, 1172 (9th Cir. 2014). This burden is met when the plaintiff shows that they took "reasonable and appropriate steps" to

pursue administrative remedies, but prison officials nonetheless interfered with the plaintiff's attempts to exhaust or failed to follow correct grievance protocol. *Nunez v. Duncan*, 591 F.3d 1217, 1224 (9th Cir. 2010).

The grievance procedure for AICs at Inverness is set forth in the Multnomah County Inmate Manual. Pedro Decl. ¶ 4, ECF No. 22-6. The manual in effect at the relevant time provides that AICs must file a grievance form within seven days of the incident. Pedro Decl. Ex. A at 23-24, ECF No. 22-7. Grievance forms for non-medical grievances are collected by the Grievance Coordinator and either dismissed or given to a staff member to review and respond. *Id.* at 24-25. The manual provides for two levels of appeal, first by the supervisor of the staff member that answered the grievance, and second by a "Final Appeal Committee." *Id.* at 25.

Here, as noted, Plaintiff filed several grievances related to the food contamination alleged in this lawsuit. Significantly, however, Defendants provide evidence that despite a "diligent search of records," there is no record that Plaintiff ever pursued either level of appeal for any of the grievances at issue. Pedro Decl. ¶¶ 9-10. Thus, Defendants have met their burden to show Plaintiff's failure to exhaust administrative remedies.

Plaintiff has failed to "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him." *Albino*, 747 F.3d at 1172. Plaintiff offers no evidence or argument that he did in fact appeal his grievances or that there was something particular about his case that made the two levels of appeal unavailable to him.

Defendants are entitled to summary judgment on Plaintiff's federal cause of action for failure to exhaust available administrative remedies. Because the failure to exhaust is dispositive

of Plaintiff's federal claim, the Court does not address Defendants' alternative arguments as to those claims.

**II. State Law Claims**

Defendants contend that the Court should decline to exercise jurisdiction over Plaintiff's state law causes of action in the event the Court grants summary judgment against Plaintiff's federal cause of action, as it now has. "A court may decline to exercise supplemental jurisdiction over state-law claims once it has 'dismissed all claims over which it has original jurisdiction.'" *Ove v. Gwinn*, 264 F.3d 817, 826 (9th Cir. 2001) (citing 28 U.S.C. § 1367(c)(3)). When determining whether to decline supplemental jurisdiction, the factors to be considered are "judicial economy, convenience, fairness, and comity." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988). Typically, when all federal claims are eliminated before a trial, "the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state law claims." *Id.* at n.7.

The Court finds that the balance of the factors here weighs heavily in favor of declining to exercise jurisdiction over the remaining state law claims. First, Plaintiff would not be prejudiced because any applicable statutes of limitations have been tolled while this action has been pending. *See* 28 U.S.C. § 1367(d) ("The period of limitations for any claim [over which the district court has supplemental jurisdiction] . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period."). Thus, it would not be unfair to Plaintiff, nor would his ability to pursue his claims be prejudiced, because he would still be able to pursue his claims in state court. Second, it would not waste judicial resources, as this Court has been minimally involved in this case to date. Finally, with respect to principles of comity, this case raises Oregon constitutional and statutory questions better suited for resolution by the state court. Plaintiff's state law claims are therefore dismissed

without prejudice to refiling those claims in state court. Because this Court declines to exercise jurisdiction over these claims, Defendants' motion for summary judgment on the state law claims are denied as moot.

**CONCLUSION**

For the reasons discussed above, Defendants' Motion for Summary Judgment (ECF No. 22) is GRANTED as to Plaintiff's federal claim. Plaintiff's state law claims are dismissed without prejudice.

DATED this 30th day of September 2026.

MUSTAFA T. KASUBHAI (he/him)
United States District Judge